IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

VIP UNIVERSAL MEDICAL INSURANCE      CASE NO.:
GROUP, LTD., a Turks and Caicos Limited
Liability Company,

      Plaintiff,

v.

BF&M LIFE INSURANCE COMPANY, LTD.,
A Bermuda Limited Liability Company,
and INTERNATIONAL REINSURANCE
MANAGERS, LLC., a Florida Corporation.

      Defendants.

_____/

## COMPLAINT

**COMES NOW** Plaintiff, VIP UNIVERSAL MEDICAL INSURANCE GROUP, LTD., a Turks and Caicos Limited Liability Company, by and through its undersigned counsel, and sues the Defendants, BF&M LIFE INSURANCE COMPANY, LTD., and INTERNATIONAL REINSURANCE MANAGERS, LLC., and alleges:

## GENERAL ALLEGATIONS

1. This is an action for breach of contract and damages in excess of $75,000.00.

2. This Court has jurisdiction pursuant to 28 U.S. § 1332.

3. At all times relevant to this action, Plaintiff, VIP UNIVERSAL MEDICAL INSURANCE GROUP, LTD. (hereinafter referred to as "VUMI"), has been and still is a Turks and Caicos Limited Liability Company, with its principal place of business located at 560 Beatrice Butterfield SQ, Providenciales, Turks and Caicos, BWI.

4. VUMI is an international health insurance company offering medical insurance plans and services to individuals, corporate clients and expatriates residing across Latin America, the Caribbean and around the globe.

5.     At all times relevant to this action, the Defendant, BF&M LIFE INSURANCE COMPANY, LTD. (hereinafter referred to as "BF&M"), is an excess reinsurer with its principal place of business in Bermuda.

6.     At all times relevant to this action, the Defendant, INTERNATIONAL REINSURANCE MANAGERS, LLC. (hereinafter referred to as "IRM"), was the agent and duly appointed representative for BF&M, with its principal place of business in Miami, Florida.

7.     BF&M and VUMI entered into an excess reinsurer agreement (hereinafter the "Agreement") effective July 1, 2014.  See Agreement attached hereto as Exhibit "A."

8.     The Agreement provided that BF&M would reinsure VUMI for medical claims in excess of $200,000.

9.     The Agreement further provided that the laws of the United States shall be applicable to the Agreement.

10.    After the effective date of the Agreement, VUMI submitted a claim to BF&M, through IRM, for reinsurance reimbursement in the amount of $139,000 which is the excess amount of the claim submitted to VUMI by its policy holder John Doe (the actual identity of the policy holder is known to the parties, but they are proscribed from revealing same due to HIPAA).  The total paid by VUMI was $339,000 per their agreement with John Doe.

11.    BF&M has refused to pay VUMI for the claim per their agreement and said denial was abetted by their agent, IRM.

12.    All conditions precedent to the presentation of this lawsuit have been met and/or have been waived by BF&M and/or IRM.

13.    Venue is proper in the United States District Court, Southern District of Florida Miami-Dade County, Florida, as IRM has its principal place of business in Miami.

## COUNT I – BREACH OF CONTRACT

Plaintiff re-alleges paragraphs 1-13 above in their entirety as they were specifically set forth herein and further states as follows:

14.     At all times pertinent to this action, VUMI has been and still is an international health insurance company providing health insurance to, among others, individuals.

15.     At all times relevant to this action, BF&M has been and still is excess reinsurer.

16.     On or about July 1, 2014, VUMI and BF&M entered into an excess reinsurance Agreement.  (See Agreement attached hereto as Exhibit "A.")

17.     Pursuant to the Agreement, BF&M was to reimburse VUMI for medical claims that exceeded $200,000.

18.     Subsequent to the inception of the Agreement, VUMI submitted an excess claim in the amount of $139,000 to BF&M, which was the excess amount above $200,000 paid to John Doe.

19.     VUMI has fully performed all duties and obligations required under the Agreement with BF&M, which has accepted and benefited from the policy premium it has collected.

20.     Despite the multiple requests for payment made by VUMI, BF&M and its agent, IRM, refuse to render payment of the $139,000.

21.     IRM, acting in concert with and on behalf of BF&M, has directed the non-payment to VUMI related to the claim for medical expenses in the total amount of $339,000 paid to VUMI policy holder John Doe.

22.     By reason of the foregoing, VUMI has sustained damages and loss in the principal amount of $139,000.00, plus interest, an amount which is due and liquidated, and remains unpaid by BF&M.

23.     That as a direct and proximate result of the Defendant's refusal to pay the Plaintiff's claim, the Plaintiff has been required to retain the services of the undersigned attorneys to represent

and protect the Plaintiff's interests and Plaintiff has become obliged to pay them a reasonable fee for their services in bringing this action.

24.    In the event that the Plaintiff prevails in this action, Plaintiff is entitled to an award of attorney fees and costs pursuant to Florida Statute Section 627.428 or other Florida law.

**WHEREFORE**, the Plaintiff, VIP UNIVERSAL MEDICAL INSURANCE GROUP, LTD., demands judgment against the Defendant, BF&M LIFE INSURANCE COMPANY, LTD., and INTERNATIONAL REINSURANCE MANAGERS, LLC., jointly and severally, in the amount of $139,000.00, plus interest, costs and reasonable attorneys' fees; and for any other further relief under the law that Plaintiff might be entitled to receive.

**JURY TRIAL IS DEMANDED ON ALL TRIABLE ISSUES**

Dated: December 20th, 2017.

NICKLAUS & ASSOCIATES, P.A.
4651 Ponce de Leon Boulevard
Suite 200
Coral Gables, Florida 33146
Telephone: (305) 460-9888
Facsimile:  (305) 460-9889


BY:___/s/ Edward R. Nicklaus
 EDWARD R. NICKLAUS, ESQ.
 Florida Bar No.: 138399
 edwardn@nicklauslaw.com
    DOUGLAS A. MCDUFF, ESQ.
    Florida Bar No.: 239046
    douglasm@nicklauslaw.com



INTERNATIONAL REINSURANCE MANAGERS, LLC

## COVER NOTE
### Excess of Loss Reinsurance

**Company or Reinsured:**

VIP Universal Medical Insurance Group Ltd.
560 Beatrice Butterfield SQ
Providenciales, Turks and Caicos
BWI

**Reinsurer:**

BF&M Life Insurance Company, Ltd.
BF&M Insurance Building
112 Pitts Bay Road
Pembroke, HM08
Bermuda
An entity with a rating of A 'Excellent' from A.M. Best

**Original Insured:**

Persons insured under the Medical Expenses Insurance Program issued by the Company.

**Business Covered:**

All in-force, new and renewed Medical insurance, prepaid or businesses issued or renewed by the Company on or after the effective date of this reinsurance agreement, and before its termination date. Aproximadamente 2,853 asegurados a Mayo 2014.

**Reinsurance Period:**

This reinsurance agreement shall be effective at 12:00 a.m., on July 1st. 2014 until 11:59 p.m., on June 30th, 2015.

**Territorial Scope:**

Worldwide.

**Type of Treaty:**

Automatic Excess of Loss Reinsurance.

**Currency:**

Transactions will be in US Dollars (US$).

**Reinsurance Limits:**

US$800,000 in excess of the priority of US$200,000 per covered person per contract year.
The Reinsurer agrees to accept 100% of the Company's gross liability, from US$200,000 up to a maximum recovery from Reinsurer of US$800,000 per covered person, per contract year.

**Total Reinsurer's liability cannot exceed the maximum benefit payable by the Company, under the reinsured policies.**



...your partner in risk

BF&M
LIFE INSURANCE CO. LTD

**Reinsured Policies:**

**Multiple Benefit Plans:**

If this reinsurance agreement covers more than one insurance benefit plan issued by the Company, claims incurred by a covered person after he or she is transferred from one reinsured benefit plan to another, will be payable under this agreement only if such covered person has completely satisfied all the terms, conditions and requirements to the extent they apply, such as eligibility requirements, or a waiting period for pre-existing conditions, that are included in the new benefit plan to which such covered person has been transferred.

**Reasonable and Customary Charges:**

With respect to claims filed under insurance policies covered under this agreement, the Reinsurer shall not be liable for any expense, or a portion of an expense, that exceeds the limits of a Reasonable and Customary Charge for a treatment, service, or supply.

**Reasonable and Customary Charge(s)** means the charge made by a provider which does not exceed the usual charge made by the majority of like providers for the same or similar procedure or services provided to persons whose injury or illness is comparable in nature and severity, and who reside in the same geographical area in which the service was given.

If necessary, the determination of what may be considered a Reasonable and Customary Charge will be made by a duly qualified and independent physician or by a physician review services organization or firm, appointed by both the Company and the Reinsurer. To reach such determination, factors such as complexity; degree of skill needed; type of specialist required; and the prevailing charge in other areas shall be considered.

The term "area" or "geographical area" means a city, a county, or any other area which must be taken into consideration to obtain a representative cross section of similar institutions or treatments in order to establish what is a Reasonable and Customary Charge for a treatment, service or supply.

**Claim notification:**

The Company shall notify to the Reinsurer, through International Reinsurance Managers (IRM), 1000 N.W. 57th Court. Suite 190, Miami, Florida 33126, USA, any claim involving this reinsurance, which in the opinion of the Company may exceed 50% of the Company's retention in covered expenses.  Such notification shall be sent to the Reinsurer in writing, no later than thirty (30) days from the date on which claim payments on any of the Company's insured's exceeds 50% of the Company's retention in covered expenses.

The Company agrees to use its best efforts to provide such notifications to the Reinsurer.

The Reinsurer shall not be liable for any claim for which the Reinsurer has not received the required notification from the Company before the expiry of: (1) twelve (12) months from the date in which the Company received the first notice of loss in connection with such a claim; and/or (2) twelve (12) months from the date of termination of this reinsurance agreement.

**Contract Terms:** This reinsurance agreement will only apply to claims:

**Incurred** on or after the effective date of this reinsurance agreement, and before the termination date of this agreement; and

**Paid and reported to the Reinsurer** no later than twelve (12) months from the date of termination of this reinsurance agreement.

Incurred from 07/01/2014 to 06/30/2015
Paid and reported to the reinsurer from 07/01/2014 to 06/30/2016

**"Incurred Claims"** means the date the service was provided or the treatment rendered to a covered person.

**Reports and Remittances:** Within thirty (30) days from the last day of each quarter, the Company shall send to the Reinsurer, a report for the quarter, containing:

1. Reinsurance premium ceded;
2. Ceded claims and claim adjustment expenses paid;
3. Claims payment advances (if applicable);
4. Recoveries;
5. Total outstanding claims at the beginning and end of the period;
6. Estimated future claims for losses unknown and unreported by the Company (IBNR).
7. Any other information required by the Reinsurer for their reporting.
   The Reinsurer shall pay all amounts due in the normal course of business and otherwise it is expected that all claims will be paid within thirty (30) calendar days of the Reinsurer's receipt of all reasonably required documentation.

**Reinsurance Premium:** Minimum Premium: US$ 3.71 per covered person, per month.
Maximum Premium: US$ 8.13 per covered person, per month.
Adjustment factor 100/80

**Minimum & Deposit Premium (M&DP):** USD$165,000

Payable quarterly, in four (4) equal installments. Each installment is due within thirty (30) days of the beginning of each quarter and adjustable every six (6) months during the contract year based on the actual number of lives for the period, and on the adjusted claims, as stated under "Reinsurance Premium".

**The reinsurance premium should be sent to:**
International Reinsurance Managers (IRM)
1000 N.W. 57th Court. Suite 190
Miami, FL 33126
U.S.A.

Any notice required under this reinsurance agreement may be delivered in paper form or via electronic email or facsimile to the extent one party has provided the other with an electronic email or facsimile address to use.

**Premium Adjustment:**

**It will apply for the total claims affecting the Specific Excess of Loss:**

It will be calculated and paid for the Reinsured 90, 180, 270 and 365 days after the end of this reinsurance agreement with the incurred claims affecting this reinsurance coverage multiply by the adjustment factor 100/80. These claim adjustment calculations it will be compared with the sum of the twelve months considering the real number of insureds per month multiply by the minimum premium and the maximum premium.

If:

   a. The claim adjustment calculation is below the sum of the twelve months of minimum premium, the final premium it will be the minimum premium. This premium cannot be below the Minimum and Deposit Premium.

   b. The claim adjustment calculation is above the sum of the twelve months of minimum premium, but below the sum of the twelve months of maximum premium, the final premium it will be the value of the claim adjustment calculation.

   c. The claim adjustment calculation is above the sum of the twelve months of maximum premium, the final premium it will be the maximum premium.

In all cases de M&DP it will be deducted from the final adjusted premium.

**Right to Off-set:**

Neither party may offset any balance, whether on account of premiums, reinsurance ceding allowances, loss or claims expenses due from one party to the other under this CONTRACT or under any other reinsurance contract heretofore or hereafter entered into between the two (2) parties whether acting as assuming reinsurer or ceding Company. The right to offset shall apply only if both parties agree on a consul of concurred basis and specify in writing the premiums and claims payments that are to be offset.

**Termination for non-payment of Premium:**

The payment of reinsurance premiums is a condition precedent to the liability of the Reinsurer under reinsurance covered by this agreement. Therefore, this reinsurance agreement will terminate in its entirety if the applicable reinsurance premium is not paid to the Reinsurer as per the terms and conditions agreed by the parties, and as stated in this reinsurance agreement under "Reinsurance Premium" and "Premium Due Date".



**Grace Period:**   The Company will have a period of 30 days from each Premium Due Date for paying the applicable reinsurance premium. This period of time is called the Grace Period. During the Grace Period, this reinsurance agreement will remain in force provided the premium due is paid before the end of the Grace Period. If premium is not paid within the Grace Period, the reinsurance agreement will terminate on the original due date of the unpaid premium.

**Reinstatement:**   After the Grace Period has ended and the reinsurance agreement has been terminated for non-payment of premium, the Company may submit a written application for the reinstatement of such coverage, along with the total amount of the unpaid premium to the Reinsurer, within fifteen (15) days from the date the Grace Period ended.

The Reinsurer has the right to approve or to reject the application for reinstatement. If approved by the Reinsurer, the reinstated reinsurance agreement will be effective on the original due date of the unpaid premium, provided any premium due to the Reinsurer has been paid in its entirety.

The Reinsurer has the right to accept no more than one reinstatement of coverage per Contract Year.

**Exclusions:**   As indicated in the reinsurance agreement effected by the parties, and including, but not limited to:

1. Any claim or expense incurred prior to the effective date of this reinsurance agreement;
2. Any exclusion included in the insurance policy subject to this reinsurance agreement;
3. Any claim of expense in excess of original policy limits;
4. Any charge (or portion of a charge), in excess of Reasonable and Customary Charges for any treatment, service or supply paid or payable under a reinsured policy;
5. Any claim or expense arising from, or occasioned by war, rebellion, revolution, and similar events or incidents;
6. Any claim or expense arising from, or occasioned by radioactivity contamination;
7. Any claim or expense arising under reinsurance assumed by the Company from another reinsurance agreement; however, policies written by another carrier using substantially the Company's policy wording and reinsured by the Company will not be excluded hereunder;
8. Any claim, or any expense directly or indirectly related to a claim, for which benefits of any kind are paid or payable under any occupational accident and/or disease legislation, or under any other employment or government related legislation or policy in force in the country or jurisdiction where the expenses were incurred;
9. Any claim or expense arising out of insolvency funds or any other such arrangement, which provides for payment of the obligations of any insolvent insurer. This exclusion will not apply in regards to claims or expenses that are covered under this reinsurance agreement;

10. Any claim or expense arising from, or related to Extra Contractual Obligations coverage. "Extra Contractual Obligations" as used in this agreement, shall mean those liabilities not covered under any other provision of this reinsurance agreement, which arise from the handling of any claim, or business covered hereunder. Such liabilities may arise from, but are not limited to, the following:

a) failure by the Company to settle within the policy limits;
b) complicity of the Company in rejecting an offer of settlement by reason of alleged or actual negligence or bad faith;
c) costs incurred by the Company in the preparation of the defense or in the trial of any action brought by its policyholder, or in the preparation of an appeal subsequent upon such action; or

11. Any claim or expense incurred for treatment, services or supplies rendered: (1) in countries; or (2) by, or for the benefit of persons and/or companies subject to trade restrictions, economic or political sanctions, and/or embargoes imposed by the government of the United States or by any of its agencies and instrumentalities.

12. Any claim charge or expense for treatments considered experimental in nature.

**Original Policy Forms:**

The Company shall send to the Reinsurer, and the Reinsurer shall acknowledge the receipt of a sample of any existing underwriting manual (if applicable), and of a representative copy of the original reinsured policy or policies, and of any form or document that the Company may issue or use in connection with the issuance of the reinsured policies. Provided, that the Company has previously delivered to Reinsurer copies of all policies that were in place during the calendar year ending December 31, 2013, and will continue to update the Reinsurer with further edits to such previously outstanding contract forms. No reinsurance on any case will be effective until the policy forms for the benefits reinsured are delivered to the Reinsurer. Failure to submit the copies of policy forms to the Reinsurer prior to the effective date of this reinsurance agreement may invalidate this agreement.

**Policy Changes:**

The Reinsurer shall not be liable for any modification made to the reinsured policy or policies, schedule of benefits, procedure, or to the Company's standard underwriting rules and practices (if applicable), and/or to any other document or material that affects or could affect the Reinsurer's liability under this reinsurance agreement, unless the Reinsurer has been notified of such modification prior to the date the change becomes effective.

**Access to Records:**

The Reinsurer, by its duly appointed representatives, shall have the right, at any reasonable time, and subject to prior written notification to the Company, to:

1. Examine all records, books, procedures, legal proceedings, files, and any other document or information in the possession of the Company, and/or

2. Conduct any claim review or audit that the Reinsurer considers as necessary, with respect to the reinsurance agreed upon under this agreement.

The Company shall cooperate in the review, including providing any information requested by the Reinsurer in advance of the review.

**Arbitration:**

**1. Negotiations**

THE COMPANY and THE REINSURER shall make all reasonable efforts, in good faith, to resolve any controversy, claim difference or dispute arising under this CONTRACT through face-to-face negotiations between senior representatives over a period of sixty (60) days, or such longer time as may be mutually agreed upon. THE COMPANY and THE REINSURER shall bear the cost of these negotiations as mutually agreed upon. Should THE COMPANY and THE REINSURER fail to resolve the dispute, THE COMPANY and THE REINSURER agree to submit the dispute to arbitration pursuant to existing applicable international regulations.

**2. Arbitration**

If THE COMPANY and THE REINSURER cannot mutually resolve a dispute that rises out of or relates to this CONTRACT or a breach thereof, or concerning its interpretation or validity, the dispute shall be settled by arbitration. The arbitrators shall make their decision based on the terms and conditions of this CONTRACT and will regard this CONTRACT from the standpoint of practical business and equitable principles (including the customs and practices of the insurance and reinsurance industries), rather than on a strict interpretation of the applicable law. Notwithstanding the foregoing, the evidence and procedural rules of the USA courts shall govern all procedural issues; however, upon order of the arbitrators or by the CONTRACT of THE COMPANY and THE REINSURER, time limits contained therein may be shortened or lengthened. The decision of the arbitrators shall be binding and not subject to appeal. The arbitration process shall be as follows:

The party wishing to initiate arbitration (the "Initiator") shall notify the other party (the "Respondent") in writing of its intention to arbitrate. Such notice shall describe in reasonable detail the issue or issues to be arbitrated, the outcome advocated by the Initiator and any other relevant particulars. The notice shall also provide the name of the Initiator's nominee, if a panel of arbitrators should become necessary. The nominee shall be an active or retired executive officer of life insurance or reinsurance companies, other than THE COMPANY and THE REINSURER, who shall be familiar with the life reinsurance business. The nominee should disclose in advance all relationships with THE COMPANY or THE REINSURER. Any objection to a nominee should be stated before arbitration begins.

The Initiator and the Respondent shall, during the thirty (30) days following such notification as described herein, endeavor to identify a single "Arbitrator" who will be acceptable to both of them; if they are

successful, that single arbitrator shall be the arbitrator for purposes of the issue or issues to be arbitrated. If they are not successful, then prior to the end of the thirty (30) days, the Respondent shall designate its nominee on the arbitration panel.  The nominee shall be an active or retired executive officer of life insurance or reinsurance companies, other than THE COMPANY and THE REINSURER, who shall be familiar with the life reinsurance business. The nominee should disclose in advance all relationships with THE COMPANY or THE REINSURER.  Any objection to a nominee should be stated before arbitration begins.  In that circumstance, the two (2) nominees will, within the two (2) weeks following such notification, mutually agree on a third member of the panel. If the Respondent fails to designate a nominee or if the two (2) arbitrators fail to agree on the selection of a third arbitrator within sixty (60) days of their appointment, each of them shall name three (3) individuals, of whom the other shall decline two (2), and the selection of the third arbitrator shall be made by drawing lots from the remaining two (2) individuals. If the Initiator fails to apply within two (2) weeks after the designation should have been made, the Respondent may either elect to make the application or may proceed on the basis that the arbitration process was never begun.  A single arbitrator or a panel of arbitrators shall be referred to herein as the "Arbitrator".

For purposes of the decision, it is agreed that the Arbitrator shall have authority coextensive with that of a court considering the same issue: specifically, the Arbitrator may grant remedies by way of injunctions and compensatory remedies.

Unless otherwise decided by the Arbitrator:

Each respective party shall bear the fees of its own counsel and all other expenses connected with the presentation of its own case; and

The cost of the arbitration, including the fees and expenses of the Arbitrator, shall be borne equally by THE COMPANY and THE REINSURER.

The place of arbitration shall be USA and the laws of The United States shall be applicable to both this section and this CONTRACT.

**Insolvency:**   In the event of the insolvency of THE COMPANY, any and all benefits that become due and payable in respect of reinsurance under this CONTRACT will be payable directly to the liquidator, receiver, or statutory successor of THE COMPANY, without diminution because of the insolvency of THE COMPANY.

In the event of the insolvency of THE COMPANY, the liquidator, receiver, or statutory successor will promptly notify THE REINSURER, in writing, of the pendency of any claim involving reinsurance under this CONTRACT after such claim is filed in the insolvency proceeding.  Such notification shall be sent to THE REINSURER no later than ten (10) days from the date such claim was filed.

During the pendency of any such claim, THE REINSURER may investigate such claim and interpose in the name of THE COMPANY, (its liquidator, receiver, or statutory successor), but at its own expense, in the proceeding where such claim is to be adjudicated, any defense or defenses which THE REINSURER may deem available to THE COMPANY, (its liquidator, receiver, or statutory successor).

LIFE INSURANCE CO. LTD

The expense thus incurred by THE REINSURER will be chargeable, subject to court approval, against THE COMPANY or its successor as a part of the expense of conservation or liquidation to the extent of a proportionate share of the benefit that may accrue to THE COMPANY solely as a result of the defense undertaken by THE REINSURER.

**Currency Clause:** All business under this Contract shall be effected in United States Dollars, and the premium and liabilities shall be expressed and payable in that currency. For the purposes of this Contract, amounts paid or received in any currency other than the United States currency shall be converted into United States Dollars at the official rates of exchange in effect on the date the Reinsurer paid or credited to the Company, as the case may be, its portion of each claim settlement, in accordance with all the terms and conditions of this Contract.

In the event the premium payable to the Reinsurer, as per the terms of this Contract, is affected by a currency fluctuation in excess of 5% as the result of an economic inflationary process, or of any other cause, the Reinsurer reserves the right, subject to previous written notice to the Company, to modify the existing premium rates, but only if such modification is:

1. necessary to correct a premium deficit caused by the currency fluctuation; and
2. limited to the amount required to correct such premium deficit.

**Oversight:** In the event that either the Company or the Reinsurer fails to comply with any requirement of this agreement, and if such failure is shown to be unintentional and the result of an oversight or misunderstanding, then this agreement will not be deemed abrogated thereby. Both the Company and the Reinsurer will be restored, to the extent possible, to the respective positions that they would have occupied had no such failure occurred. For the purpose of this agreement, accidental failure and clerical errors are considered oversight.

**Cancellation:** Written notification of termination sent ninety (90) days prior to renewal date.

**Taxes:** No applicable.

**Case Number:** B14071104EH

LIFE INSURANCE CO. LTD.

**EXECUTION OF COVER NOTE**

We the undersigned hereby agree to the terms and conditions contained herein.

Signed in Dallas, Texas this _____ day of _____, 2014, for and on behalf of **VIP Universal Medical Insurance Group, LLC.:**

_____
                    **(Signature)**

**Name:** _____

**Title:** _____

And

Signed in Miami, Florida, USA this ___*01*___ day of _____*July*_____, 2014, for and on behalf of **BF&M Life Insurance Company, Ltd.:**

BF&M
LIFE INSURANCE COMPANY LIMITED

Case No._____

_____
Authorized Signature
June Chen, MS, MA
President
**International Reinsurance Managers, IRM LLC.**